# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **ALBERTO ROBAINA,,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 09 C 3525 |
| **AMERICAN AIRLINES, INC.,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alberto Robaina ("Robaina") sued American Airlines, Inc. ("American") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that American discriminated against him because he is Hispanic; he also claims that American retaliated against him for complaints of discrimination that he made to American's Human Resources Department. American has moved for summary judgment. For the reasons explained below, the motion is granted.

I.

During the time period in question, Robaina worked as a Production Supervisor in American's Maintenance & Engineering ("M&E") Department at O'Hare International Airport. Part of Robaina's job was to monitor and counsel the employees under his supervision regarding time and attendance issues. Whenever an employee was absent from work, a Production Supervisor was required

to speak with the employee about the matter and to document the discussion in a report referred to as a "C23."

On December 9, 2006, Mike Morgan ("Morgan"), Robaina's manager, sent Robaina an email listing a number of employee absences for which Robaina had failed to submit a C23. The message stated, "[t]his is a serious condition and constitutes gross neglect of your duties and responsibilities as a supervisor for American Airlines." Morgan's email went on to say that failure to close out the C23s by December 18, 2006 would "result in further disciplinary action," and that "continued failure to close out your open C23s will not be tolerated."

Robaina was insulted by the email's tone and took umbrage at Morgan's suggestion that he had been disciplined on prior occasions for failing to close out his C23s. Robaina claims that he received a general notice regarding C23s that had been sent to all Production Supervisors; but he claims that he was never informed of any problems with his handling of C23s in particular. He went to see Morgan in his office and the encounter soon became heated. Robaina began yelling at Morgan and called him a coward for emailing him about the problem instead of speaking with him in person. Some witnesses testified that Robaina also told Morgan, "[n]obody threatens me and gets away with it." Pl.'s Resp. 56.1 Stmt. ¶ 45. Robaina admits to yelling at Morgan, but he claims that Morgan yelled at him as well. Robaina also claims that Morgan ridiculed

him by saying that he (Robaina) "should go to Human Resources to complain about the email like he had done in the past." Pl.'s Resp. 56.1 Stmt. ¶ 17. Morgan instructed Robaina to hand over his identification badge and to go home. Robaina refused, however, and instead returned to his work area.

Morgan reported the incident to Station Manager Serge Balsamo ("Balsamo"), who in turn had the matter investigated by Richard Williams ("Williams"), the Manager of M&E Operations. Williams interviewed Robaina and Morgan and a number of other employees; he also consulted Joanna Gonzalez ("Gonzalez") of American's Human Resources Department. Williams concluded that Robaina had been insubordinate in violation of American's Rules of Conduct and he fired Robaina. After unsuccessfully appealing the decision in accordance with American's procedures, Robaina filed the instant suit.

## II.

A plaintiff may "attempt to prove his racial discrimination case under either the direct or indirect method." *Montgomery v. American Airlines, Inc.*, --- F.3d ----, 2010 WL 4670173, at *7 (7th Cir. 2010). Robaina seeks to establish his discrimination claim solely by means of the latter method. This requires Robaina first to make out a prima facie case for his discrimination claim by producing evidence: (1) that he was a member of a protected class, (2) that he was performing his job satisfactorily, (3) that he

suffered an adverse employment action, and (4) that American treated a similarly situated individual outside his protected class more favorably. *Id.* If he succeeds, the burden shifts to American to "identify a legitimate, nondiscriminatory reason for the action taken." *Id.* If American is able to come forward with a nondiscriminatory reason for the adverse employment action, the burden shifts back to Robaina to show that the proffered reason is pretextual. *Id.*

Robaina is unable to make out a prima facie case in support of his discrimination claim. This is because, inter alia, he has failed to identify any employees similarly situated to himself. To show that one employee is similarly situated to another, it is typically necessary to show "that the employee held the same type of job, was disciplined by the same supervisor, was subject to the same standards, had comparable experience and qualifications, and engaged in the same conduct without differentiating or mitigating circumstances." *Bodenstab v. County of Cook*, 569 F.3d 651, 657 n.2 7th Cir. 2009). The problem here is that none of the potential comparators cited by Robaina was disciplined by Williams.

Robaina argues that the Seventh Circuit has become much more relaxed about the need to show that comparators have been disciplined by the same supervisor. Quite simply, this is incorrect. The Seventh Circuit continues to affirm the importance of showing that putative comparators were punished by the same

supervisor. *See, e.g.*, *Bodenstab*, 569 F.3d at 657 n.2 ("Discipline from a different supervisor 'sheds no light' on the disciplinary decision.") (quoting *Little v. Illinois Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004)). And to the extent that there are exceptions to this rule, Robaina identifies no circumstances that would warrant application of the exception on the facts of this case.

Yet even if Robaina were able to make out a prima facie case, his discrimination claim still would fail because he has not come forward with sufficient evidence of pretext. In attempting to establish the pretextual character of American's proffered reason for firing him (his insubordination), he alleges that Balsamo once said to him, "you know, in New York we used to eat Puerto Ricans for lunch." Pl.'s L.R. 56.1 Stmt. ¶ 61. Robaina also claims that Balsamo called him a "shoe salesman." *Id.*

Even assuming that these allegations are true, they do little to help Robaina's case, for he has failed to make any connection between these statements and his termination. Robaina concedes that the decision to terminate his employment was made by Williams (in conjunction with Gonzalez). Def.'s L.R. 56.1 Stmt. ¶ 55. As the Seventh Circuit has pointed out, a plaintiff in a discrimination suit "does not win by showing prohibited animus by just anyone. He must show that the *decisionmaker* harbored animus and relied on that animus in choosing to take action." *See, e.g.*, *Staub v. Proctor*

*Hosp.*, 560 F.3d 647, 655 (7th Cir. 2009). Since Williams and Gonzalez were the decision-makers, Balsamo's comments are beside the point.

As for Williams and Gonzalez, Robaina fails to come forward with any convincing evidence of a discriminatory animus. Indeed, in Gonzalez's case, the evidence strongly militates against any finding of discrimination since she, like Robaina, is Hispanic. *See, e.g.*, *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th Cir. 1997) (finding it "highly unlikely" that defendant was prejudiced against Americans since the defendant himself was also American).

With respect to Williams, Robaina puts forth a single allegation: he claims that in a conversation with Gonzalez, Williams questioned whether Robaina might need the assistance of an interpreter in participating in the investigation. The logic of his argument is difficult to follow, but Robaina argues that this comment can support an inference of pretext because Williams had previously worked with Robaina for several months and was aware that Robaina did not need the help of an interpreter. In any case, this argument is based entirely on Robaina's own deposition testimony. In particular, he cites the following passage:

> Q. You don't believe Mr. Williams ever discriminated against you based on your race, ethnicity or national origin, do you?
>
> A. Mr. Williams had an issue with me because I spoke

>           Spanish, sir.
>
> Q.    What do you mean by that?
>
> A.    Well, Mr. Williams, he basically -- I -- I'm sorry.
>       This is emotional for me, so it's just going to take
>       me a minute to regroup myself.  He just made a
>       comment one time about my accent. That's about it.
>       I think he had an issue with me because of that. And
>       I can't say for sure, but it's just a comment that
>       he made one time.
>
> Q.    What was that comment?
>
> A.    That I have an accent.
>
> Q.    Is that it?
>
> A.    That was it.
>
> Q.    Approximately when was that comment made?
>
> A.    You know, sir, I really don't know. It just stuck in
>       my head.

Simply put, this does not constitute evidence from which a jury could reasonably infer that Williams harbored a discriminatory animus against Robaina or that the decision to terminate Robaina was pretextual.  First, as American points out, Robaina in fact makes no mention of an interpreter in the above-cited passage.  He states only that Williams remarked upon his accent.  Nor does there appear to be a reference to Robaina's need for an interpreter anywhere else in the record.  Hence, there is no basis whatsoever for thinking that Williams made any remark about Robaina's need for an interpreter.

Robaina seeks to use Williams's reference to his accent as

evidence of a racial animus. The exact nature of the alleged remark is unclear, and Robaina fails to provide any information about its context, such as when or where it was made. Indeed, Robaina himself is highly tentative about what the alleged remark might have meant. In short, Robaina has failed to raise a genuine issue of material fact in connection with the issue of pretext. *See, e.g.*, *Beard v. Whitley County REMC*, 840 F.2d 405, 412 (7th Cir. 1988).

For these reasons, American is entitled to summary judgment with respect to Robaina's discrimination claim.

IV.

In addition to his discrimination claim, Robaina asserts that he was terminated in retaliation for a prior complaint of discrimination that he lodged on November 12, 2005. On that date, Robaina called American's Human Resources hotline to report what he claims was "discriminatory, inappropriate and threatening conduct." Resp. at 5. The HR Department's report of the complaint does not indicate that Robaina complained of discrimination. Nevertheless, Robaina insists that he complained to the HR Department that he was subjected to discrimination because he was Hispanic.

As with a discrimination claim, a plaintiff may try to prove a retaliation claim through either the direct or the indirect method. *See, e.g.*, *Poer v. Astrue*, 606 F.3d 433, 439 (7th Cir. 2010). Here, the indirect method is not open to Robaina because, as already discussed, he has proved unable to identify any similarly

situated employees who were treated better than he was. Robaina's retaliation claim also fails to survive summary judgment under the direct method. The direct method requires a plaintiff to "present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687 (7th Cir. 2010) (quotation marks omitted).

Robaina's attempt to proceed under the direct method is flawed in several respects. To begin with, the employee who was alleged to have discriminated against Robaina, Ed Blasini, was also of Puerto Rican national origin. As in the case of Gonzalez, this militates strongly against an inference of discrimination. *See, e.g.*, *Wallace*, 103 F.3d at 1400. Indeed, Robaina's testimony regarding the earlier incident is difficult to understand. While he insists that he complained of discrimination in relation to this incident, he concedes in his response to American's Local Rule 56.1 Statement that "he did not believe Blasini discriminated against him because he is Hispanic of Puerto Rican or that the incident had anything to do with his national origin." Pl.'s Resp. 56.1 Stmt. ¶ 70. The exact nature of the alleged discrimination, therefore, is unclear.

More to the point, Robaina is unable to show a causal connection between his termination and his November 2005 complaint. First, more than a year had elapsed between Robaina's complaint and

the alleged retaliation.  The Seventh Circuit has explained "the hint of causation weakens as the time between the protected expression and the adverse action increases and the plaintiff must offer additional proof of a causal nexus."  *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1008 (7th Cir. 2002)(quotation marks, italics, and brackets omitted).  It has also "held in numerous cases that a one-year lapse between the protected expression and the employee's termination, standing alone, is too attenuated to raise an inference of discrimination."  *Id.*

Robaina points out that Morgan's alleged comment in December 2006 -- i.e., that Robaina "should go to Human Resources to complain about the email like he had done in the past" -- was much closer in time to the termination and provides stronger evidence of a causal connection.  But it was Williams (and Gonzalez), not Morgan, who decided to terminate Robaina's employment; and it is undisputed that Williams was not aware of the earlier complaints.  Def.'s 56.1 Stmt. 72.  As a result, no causal relationship can be established between Morgan's alleged comment and Robaina's termination.

Against this, however, Robaina contends that even if Williams himself was unaware of the previous complaint, retaliation can be established if individuals with a "discriminatory animus provided factual information or other input that may have affected the adverse employment action."  Pl.'s Resp. at 17.  According to Robaina, Williams relied on information from Morgan and Balsamo, and

was assisted in making his decision by Gonzalez.  If the information these individuals supplied to Williams was skewed by a retaliatory animus, Robaina argues, Williams's ultimate decision can be regarded as retaliatory.  Robaina relies on *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446 (7th Cir. 1994), in which the court stated that "[s]ummary judgment generally is improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action."  *Id.* at 1459.

Robaina's argument overlooks the fact that later Seventh Circuit cases have expressly disapproved *Dey* on this point.  *See, e.g.*, *Brewer v. Board of Trustees of University of IL*, 479 F.3d 908 (7th Cir. 2007).  Instead, the court has come to rely upon the so-called "cat's paw" doctrine.  *Id.*  Under the cat's paw theory, "[f]or a nominal non-decision-maker's influence to put an employer in violation of Title VII, the employee must possess so much influence as to basically be herself the true functional decision-maker.  The nominal decision-maker must be nothing more than the functional decision-maker's 'cat's paw.'"  *Id.* at 917-18 (citation, brackets, and ellipsis omitted); *Staub v. Proctor Hosp.*, 560 F.3d 647, 659 (7th Cir. 2009) cert. granted, --- U.S. ----, 130 S. Ct. 2089 (2010).  "By contrast, where a decision maker is not wholly dependent on a single source of information, but instead conducts its own investigation into the facts relevant to the

decision, the employer is not liable for an employee's submission of misinformation to the decision maker." *Brewer*, 479 F.3d at 918. "It does not matter that in a particular situation much of the information has come from a single, potentially biased source, so long as the decision maker does not artificially or by virtue of her role in the company limit her investigation to information from that source." *Id.*

Here, Williams did not rely solely on Morgan or Balsamo (or indeed on any potentially biased source) in making his decision to terminate Robaina. Williams interviewed Morgan as part of his investigation; but he interviewed a number of other employees as well. Def.'s L.R. 56.1 Stmt. ¶ 41 (stating that Williams "interviewed and/or took statements from: (1) Mike Morgan, the supervisor involved in the altercation; (2) Brady Malone, the crew chief who was present during the meeting; (3) Darryl Clark, the mechanic who overheard the meeting; and (4) Keith Mitchell, a Production Supervisor who overheard the meeting") (citations omitted). Thus, even assuming that Robaina has pointed to evidence of a retaliatory animus on Morgan's part, this would not impugn Williams's termination decision.

The same is true in the case of Balsamo. Robaina claims that Balsamo was "substantially involved" in the decision to terminate his employment. *See* Pl.'s Resp. at 5. However, the record fails to bear this out. Robaina claims that Williams "frequently

answered" to Balsamo and that Balsamo was the chair of the investigation. Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 39. Robaina also points out that Balsamo asked the questions when Robaina was interviewed in connection with the incident. *Id.* ¶ 61. While these allegations indicate that Balsamo was involved in the investigation, they do not show that he was involved in the decision to terminate Robaina. On the contrary, as already noted, Robaina specifically admits that Williams and Gonzalez were the ultimate decision-makers, Def.'s L.R. 56.1 Stmt. ¶ 55, and once again, Robaina offers no evidence that Gonzalez was motivated by a retaliatory animus of any kind. Finally, it should be noted that, even assuming *arguendo* that Balsamo was "substantially involved" in the decision to terminate Robaina, this still would not support Robaina's retaliation claim. The comments Balsamo is alleged to have made -- that "in New York we used to eat Puerto Ricans for lunch" and his reference to Robaina as a shoe salesman -- are related to Robaina's race; they do not evince a retaliatory motivation to get back at Robaina for his prior complaints of discrimination.

In short, American is entitled to summary judgment with respect to Robaina's retaliation claim.

V.

For these reasons, American's motion for summary judgment is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: January 4, 2011